**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA - LAS VEGAS**

| | |
|---|---|
| US Express Carriers LLC, ) | |
| ) | Case No.: |
| Plaintiff, ) | |
| ) | |
| v. ) | **Complaint for Declaratory Relief** |
| ) | |
| United Specialty Insurance Company; Penske ) | |
| Truck Leasing Company, L.P., Penske Truck ) | |
| Leasing Corporation, James Parks, III ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff, US Express Carriers LLC, by and through its undersigned attorneys, pursuant to FRCP Rule 57 and the Uniform Declaratory Judgments Act, and for its Complaint against the Defendants herein, seeks a declaratory judgment from this Honorable Court as set forth below.

**Parties and Jurisdiction**

1. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure, Rule 57, for the purposes of determining a question of actual controversy between the parties as hereinafter more fully appears.

2. Plaintiff, US Express Carriers LLC ("US Express") is a limited liability company organized under the laws of the State of Nevada.

3. Defendant United Specialty Insurance Company ("USIC") is a corporation incorporated pursuant to the laws of the State of Delaware with its principal place of business in the State of Texas.

4. Defendant Penske Truck Leasing Company, L.P., is a Delaware limited partnership with no member constituting a citizen and resident of the State of Nevada.

1

5.  Defendant Penske Truck Leasing Corporation is a corporation incorporated pursuant to the laws of the State of Delaware with its principal place of business in the Commonwealth of Pennsylvania.

6.  Defendant James Parks, III is a citizen and resident of the State of Oregon.

7.  No member(s) of US Express are a resident and citizen of the state(s) of residence of any Defendant.

8.  Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332, because the Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs.

9.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

**Factual Background**
**(The USIC Policy)**

10. On or about January 25, 2020, USIC issued a policy of insurance to US Express, with effective dates of January 25, 2020, through January 25, 2021, Policy No. XNX-FINFR1905408-264, which provided, amongst other coverages, $1,000,000 in commercial auto liability coverage and $250,000 in motor truck cargo coverage (the "USIC Policy"). A true and accurate copy of the USIC Policy (with premiums redacted) is attached hereto as **Exhibit A**.

11. In connection with the procurement of the USIC Policy, US Express and/or a representative of US Express, notified USIC via Clear Connect Solutions, that US Express anticipated transporting Class 9 hazardous materials in connection with US Express's motor carrier operations.

12. With full knowledge that US Express likely would be transporting Class 9 hazardous materials as part of its motor carrier operations, USIC issued the USIC Policy to US Express providing coverage as outlined hereinabove.

2

13. As evidence of USIC's knowledge that US Express might transport Class 9 hazardous materials as part of its motor carrier operations, USIC included a MCS 90 endorsement on the USIC Policy in the higher amount of $1,000,000, as required under the federal financial responsibility regulations including 49 C.F.R. part 387.

14. The USIC Policy provides, in relevant part, as follows:

> **SECTION II – COVERED AUTOS LIABILITY COVERAGE**
>
> **A. Coverage**
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

…

…

…

…

…

…

…

3

> We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.
>
> 1. **Who Is An Insured**
>
>    The following are "insureds":
>
>    a. You for any covered "auto".
>
>    b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
>       (1) The owner or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".
>
>       (2) Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.
>
>       (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
>
>       (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".
>
>       (5) A partner (if you are a partnership), or member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.
>
>    c. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.
>
>    d. The lessor of a covered "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased "auto" is used in your business as a "motor carrier" for hire.
>
>    e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.
>
>    However, none of the following is an "insured":
>
>    (1) Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":
>
>       (a) If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.
>
>       (b) If the "motor carrier" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are leased to that "motor carrier" and used in his or her business.
>
>    However, Paragraph (1) above does not apply if you have leased an "auto" to the for-hire "motor carrier" under a written lease agreement in which you have held that "motor carrier" harmless.
>
>    (2) Any rail, water or air carrier or its "employees" or agents, other than you and your "employees", for a "trailer" if "bodily injury" or "property damage" or a "covered pollution cost or expense" occurs while the "trailer" is detached from a covered "auto" you are using and:
>
>       (a) Is being transported by the carrier; or
>
>       (b) Is being loaded on or unloaded from any unit of transportation by the carrier.
>
> 2. **Coverage Extensions**
>
>    a. **Supplementary Payments**
>
>       We will pay for the "insured":
>
>       (1) All expenses we incur.
>
>       (2) Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

…

…

…

POLICY NUMBER: XNX-FINFR1905408-264

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTO COVERAGE PART
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

The provision of the Coverage Form apply unless modified by this endorsement.

SECTION II – COVERED AUTOS LIABILITY COVERAGE
PARAGRAPH A , ITEM 1 – IS REPLACED BY THE FOLLOWING:

1. WHO IS AN INSURED
   a. You for any covered "auto" only when the covered "auto" is driven by an approved driver described in paragraph b. of the section:
   b. Any driver authorized as a commercial licensed driver while operating a covered "auto with your knowledge and consent under your operating authority. No coverage will apply to any driver newly placed in service after the policy begins until you report that driver to us and we advise you in writing that he/she is acceptable to us and that he/she is covered under the policy. Coverage on any such driver newly placed in service will become effective as of the date and time we advise you he/she is acceptable and that they are covered by the policy and not before. Subject to the reporting methods outlined and agreed to in the notification procedure outline signed by you and your agent prior to coverage being affected under the policy.

...

...

...

...

IL 01 10 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEVADA CHANGES – CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART – FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL COVERAGES, CONDITIONS, DEFINITIONS
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM
STANDARD PROPERTY POLICY

The **CONCEALMENT, MISREPRESENTATION OR FRAUD** Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss ("loss") or damage in any case of:

1. Concealment or misrepresentation of a material fact; or
2. Fraud;

committed by an insured ("insured") at any time and relating to a claim under this policy.

…

…

…

…

15. The Motor Carrier—Cargo Coverage Form on the USIC Policy provides as follows:

**A. Coverage**

1. We will pay those sums you as a transportation carrier, become legally obligated to pay by contract, bill of lading, shipping receipt or tariff for direct physical "loss", except for the causes listed in Section **B. EXCLUSIONS**, to "Covered Property", owned by others in your care, custody or control, while in "due course of transit", caused by a covered cause of "loss".

2. **Limitation:** This coverage shall not apply to:
   a. Any costs, expenses, attorney's fees, fines, penalties or damages you incur by violating any law or regulation relating to delay in payment, denial or settlement of claims; or
   b. Any claim for damages in excess of your contractual liability unless expressly provided by this policy.

3. **Property Excluded and Not Covered:**
   We will not pay for "loss", expenses or those sums you become legally obligated to pay to the following:
   a. "Loss" to transporting vehicles including trailers and similar vehicles, reusable shipping and packing materials including intermodal containers, chains, cables or other property used to protect and or secure the cargo;
   b. Property you transport at no charge;
   c. Property at terminals you own, lease or operate which are not listed in the schedule and which are not newly acquired;
   d. Property you are responsible for in your capacity as either a freight forwarder or "transportation broker";
   e. Jewelry (including watches that retail for $150 or more), precious or semi-precious stones, precious metals, alloys, furs or other similar valuables;
   f. Paintings, statuary and other objects of art;
   g. Accounts, bills, bullion, currency, money, deeds, notes, securities, tickets including lottery tickets, evidences of debt;
   h. Contraband or property in the course of illegal transportation or trade; or
   i. Any other property excluded by endorsement to this policy.

4. **Additional Coverages**
   a. **Debris Removal Expense**
   We will pay expenses you incur to remove debris of "Covered Property" you transport resulting from a "loss" except for the causes listed in Section **B. EXCLUSION**, that occurs during the policy period. The expenses will be paid only if they are reported to us within 180 days of the earlier of:
   (1) The date of direct physical "loss"; or
   (2) The end date of the policy period.

   The most we will pay under this Additional Coverage is $25,000 for all expenses in any one occurrence.

   This Additional Coverage does not apply to expenses to:
   (1) Extract "pollutants" from land or water; or
   (2) Remove, restore or replace polluted land or water.

   b. **Pollutant Clean Up and Removal Expense**
   We will pay any legally imposed expense you incur to extract "pollutants" from land or water if the release, discharge or dispersal of the "pollutants" is caused by or results from a "loss", except for the causes listed in Section **B. EXCLUSIONS**, to "Covered Property" you transport which occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:
   (1) The date of direct physical "loss"; or

16. The USIC Policy did not exclude coverage for the transportation of Class 9 hazardous materials.

**The Accident**

17. On or about May 5, 2020, around 11:50 a.m., on I-81 in Smyth County, Virginia, James Parks III was the driver of a 2020 Freightliner (VIN 3AKJHHDR6LSME0594) (the "Freightliner") and was pulling a trailer loaded with paraformaldehyde prills received from Celanese Ltd. in Texas for

7

shipment to Troy Chemical Corporation in New Jersey (the "Freight") when he struck the rear of a 2007 International flatbed (VIN 1HTMMAAM07H334038) (the "International") owned by Sexton Traffic Control, Inc. ("Sexton Traffic Control") in which Lawrence Steven Bryson was an occupant (the "Accident").

18.   The Freight was a sealed load and the shipper provided US Express with the hazmat placards, shipping documents, and Material Safety Data Sheet ("MSDS") indicating the Freight was classified as a Class 9 hazardous material.

19.   As a result of the Accident, the International was damaged and Bryson alleges personal injuries stemming from the Accident.

20.   At the time of the Accident, the Freightliner was specifically described on the Declarations Page to the USIC Policy.

21.   At the time of the Accident, US Express had reported to USIC and USIC had approved Parks as an approved driver under the terms of the USIC Policy.

22.   At the time of the Accident, the Freight did not constitute an "explosive" under the USIC Policy.

**Claims & Lawsuits**

23.   Progressive Northern Insurance Company ("Progressive"), as the insurer for Sexton Traffic Control, paid to or on behalf of Sexton Traffic Control various payments for the alleged property damage to the International.

24.   As a result of the payment, Progressive became subrogated to Sexton Traffic Control's rights against US Express and Parks in relation to the Accident.

25.   Progressive made a claim for its subrogated losses against US Express totaling $50,656.95 (the "Progressive Claim").

26. US Express tendered the Progressive Claim to USIC for defense and indemnification under the USIC Policy.

27. USIC denied coverage for the Progressive Claim under the USIC Policy, claiming misrepresentation in the application for insurance by US Express and maintaining, despite the shipping documentation and MSDS establishing the Freight as a Class 9 hazardous material, that it should have properly been categorized as a Class 4.1 hazardous materials.

28. Subsequent to USIC's denial of the Progressive Claim, Progressive filed a lawsuit in the Circuit Court of Smyth County, Virginia against US Express and Parks for its subrogated losses sustained in connection with the Accident (the "Progressive Lawsuit").

29. USIC did not provide a defense to US Express in connection with the Progressive Lawsuit, with Progressive ultimately obtaining a judgment against US Express and Parks, which to date remains unsatisfied.

30. As a result of the Accident, claims were made against US Express for the damaged Freight in the amount of $19,370.37, which US Express tendered to USIC for defense and indemnification under the cargo provisions of the USIC Policy (the "Cargo Claim").

31. USIC denied coverage for US Express in relation to the Cargo Claim, claiming misrepresentation in the application for insurance by US Express and maintaining, despite the shipping documentation and MSDS establishing the Freight as a Class 9 hazardous material, that it should have properly been categorized as a Class 4.1 hazardous materials.

32. Subsequent to USIC's denial of the Cargo Claim, US Express thereafter made payment to the consignee in the amount of $19,370.37 to resolve the Cargo Claim.

33. US Express has made demand upon USIC for reimbursement in the amount of the payment in relation to the Cargo Claim, which USIC has, to date, denied.

34. As a result of the Accident, Bryson has made personal injury claims against US Express and Parks in an amount exceeding $2,000,000 (the "Bryson Claim").

35. US Express tendered the Bryson Claim to USIC for defense and indemnification under the USIC Policy.

36. USIC denied coverage for the Bryson Claim under the USIC Policy, claiming misrepresentation in the application for insurance by US Express and maintaining, despite the shipping documentation and MSDS establishing the Freight as a Class 9 hazardous material, that it should have properly been categorized as a Class 4.1 hazardous materials.

37. Subsequent to USIC's denial of the Bryson Claim, Bryson filed a lawsuit in the Circuit Court of Smyth County, Virginia against US Express, Parks, and the Penske entities seeking compensatory and punitive in excess of $2,000,000 (the "Bryson Lawsuit").

38. To date, USIC has provided a defense to US Express, Parks, and the Penske entities in relation to the Bryson Lawsuit, under what it purports to be a reservation of rights to deny coverage, though upon information and belief USIC has not issued any Reservation of Rights, updated Reservation of Rights notification to any defended party, or any correspondence otherwise modifying its prior denials of coverage.

**Case or Controversy Requirements are Satisfied**

39. All proper and present antagonistic interests or all parties having any interest in the outcome and adjudication of the present controversy are before the Court by proper process.

40. US Express is in doubt with respect to its rights under the USIC Policy and, by this Complaint, seeks a declaration of US Express's rights and USIC's obligations under the USIC Policy with respect to claims asserted by or against US Express, Parks, and Penske entities in relation to the Accident, including but not limited to the aforesaid claims and lawsuits.

10

41. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure, Rule 57, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to give such relief as it deems necessary under the facts and circumstances presently existing.

**First Cause of Action**
**(Declaratory Judgment as to the USIC Policy)**

42. US Express restates and incorporates the foregoing allegations by reference as if fully stated herein.

43. The USIC Policy provides coverage, including defense and indemnification obligations, for the Accident and the claims relating thereto including the Progressive Claim, the Progressive Lawsuit, the Cargo Claim, the Bryson Claim, and the Bryson Lawsuit.

44. At the time of the Accident, US Express, Parks, and the Penske entities constituted "insureds" entitled to coverage under the USIC Policy in relation to the Accident.

45. No exclusion to coverage under the USIC Policy applies with respect to the Accident.

46. No provision of the USIC Policy applies to remove the Accident and the resulting claims from coverage under the USIC Policy.

47. USIC has improperly denied coverage to US Express, Parks, and the Penske entities in relation to the Accident and the claims relating thereto including the Progressive Claim, the Progressive Lawsuit, the Cargo Claim, the Bryson Claim, and the Bryson Lawsuit.

48. USIC has improperly denied coverage to US Express, Parks, and the Penske entities in relation to the Accident because US Express did not make any material representation to USIC in connection with its application for insurance; to wit, US Express clearly and expressly provided notice to USIC that it would be transporting Class 9 hazardous materials in connection with its motor carrier operations and US Express was transporting Class 9 hazardous materials at the time of the Accident.

49. USIC has improperly denied coverage to US Express, Parks, and the Penske entities in relation to the Accident because US Express did not make any material representation to USIC in

connection with its application for insurance; to wit, US Express made no misrepresentation committed with fraudulent intent, any misrepresentation that was material to the acceptance of the risk, or any misrepresentation that would have caused USIC to have not issued the policy or contract at the same premium had the misrepresentation not been made.

50.  The alleged misrepresentation did not result in or lead to the Accident and was not material because it did not increase the risk to USIC.

51.  USIC has improperly denied coverage to US Express, Parks, and the Penske entities in relation to the Accident because USIC has not properly rescinded the USIC Policy and has otherwise failed to return all premium to US Express as required by Nevada statutory and common law.

52.  USIC has improperly denied coverage to US Express, Parks, and the Penske entities in relation to the Accident because any attempted rescission of the USIC Policy is inconsistent with Nevada statutory and common law.

53.  USIC is estopped from denying coverage in relation to the Accident because it has failed to provide adequate notice to the insured(s) of the basis of its denial of coverage.

54.  USIC is estopped from denying coverage in relation to the Accident because it has not properly reserved its rights to deny coverage prior to undertaking the defense of US Express, Parks, and the Penske entities in relation to the Bryson Lawsuit.

55.  USIC has waived any basis for denying coverage in relation to the Accident, because it did not properly reserve its right to deny coverage to undertaking the defense of US Express, Parks, and the Penske entities in relation to the Bryson Lawsuit.

56.  US Express has detrimentally relied on USIC providing a defense to the Bryson Lawsuit because USIC did not reserve its rights to deny coverage prior to undertaking the defense.

…

…

**PRAYER FOR RELIEF**

For each of the foregoing reasons, US Express is entitled to an Order holding that USIC is required, under the USIC Policy, to provide defense and indemnification obligations in favor of US Express, Parks, and the Penske entities in relation to the Accident, including but not limited to the Progressive Claim, the Progressive Lawsuit, the Cargo Claim, the Bryson Claim, and the Bryson Lawsuit, as well as US Express's costs and fees incurred in prosecuting this Action.

DATED this 27th day of February, 2023.

THORNDAL ARMSTRONG, PC

By _____
BRUCE SCOTT DICKINSON, ESQ.
Nevada Bar No. 002297
1100 E. Bridger Avenue
Las Vegas, NV  89101
TEL: (702) 366-0622 / FAX: (702) 366-0327
bsd@thorndal.com

Attorneys for Plaintiff